STATE OF NORTH CAROLINA v. WILBERT LONG, JR., WILL JOHNSON, JR., AND EDDIE LEE JOHNSON

No. 81

(Filed 15 March 1972)

1. Criminal Law § 88; Witnesses § 8— cross-examination — collateral matter — rebuttal evidence

Answers made by a witness to a collateral question on cross-examination are conclusive, and the party who draws out such answers will not be permitted to contradict them, except (1) where the question put to the witness on cross-examination tends to connect him directly with the cause or the parties, and (2) where the cross-examination is as to a matter tending to show motive, temper, disposition, conduct, or interest of the witness toward the cause or parties.

2. Criminal Law § 88; Witnesses § 8— material or collateral matter — test

The proper test for determining what is material and what is collateral is whether the evidence offered in contradiction would be admissible if tendered for some purpose other than mere contradiction;

State v. Long

or in the case of prior inconsistent statements, whether evidence of the facts stated would be so admissible.

3. **Criminal Law § 88; Robbery § 3; Witnesses § 8— armed robbery — cross-examination as to acquisition of pistol — material matter — rebuttal testimony**

In a prosecution for attempted armed robbery of a service station, cross-examination of defendant as to whether the pistol used in the attempted robbery had been acquired by him in the robbery of a grocery store was an inquiry tending to establish an essential element of the crime for which defendant was on trial—the criminal intent of defendant when he entered the service station—rather than an inquiry about a collateral matter; consequently, the State was not bound by defendant's denial that he had acquired the pistol in such manner and could properly present rebuttal testimony by an employee of the grocery store that defendant had taken the pistol in a robbery of the store.

4. **Criminal Law § 169— error in limiting consideration of evidence — prejudice**

Defendant was not prejudiced by the fact that the trial court erroneously limited consideration of rebuttal testimony tending to establish an essential element of the crime to mere contradiction or impeachment of defendant, since the error was favorable to him and prejudicial to the State.

5. **Criminal Law § 34— evidence showing commission of another crime — competency to show intent**

Where a specific mental intent or state is an essential element of the crime charged, evidence may be offered of such acts or declarations of the accused as tend to establish the requisite mental intent or state, even though the evidence discloses the commission of another offense by the accused.

6. **Criminal Law § 34— evidence showing commission of another offense — competency to show intent**

In this prosecution for attempted armed robbery of a service station, rebuttal testimony offered by the State tending to show that the pistol used in the robbery was acquired by defendant in the robbery of a grocery store was competent as substantive evidence bearing upon the criminal intent of defendant when he entered the service station he is charged with attempting to rob, notwithstanding the testimony discloses defendant's commission of another crime for which he has not been convicted.

7. **Criminal Law § 95— presumption that jury followed instructions**

The law will presume that the jury followed the judge's instructions not to consider against defendants evidence presented by the State to rebut the testimony of a codefendant.

APPEAL by defendants from *McLean, J.,* 19 April 1971 Special Criminal Session, MECKLENBURG Superior Court, docketed as Case No. 146 and argued at the Fall Term 1971.

State v. Long

Defendants were charged in separate indictments with attempted armed robbery of Charles Thomas Stewart on 12 February 1971. The three cases were consolidated for trial.

The State's evidence tends to show that Charles Thomas Stewart and Ronnie Sailers worked at a Gulf Service Station located at the intersection of I-85 and Statesville Avenue in Charlotte. On 12 February 1971 at 9:45 p.m., the three defendants, in a 1962 model Mercury Comet, blue with white top, entered the service station where the driver bought and paid for a dollar's worth of gas. Will Johnson, Jr., the driver, parked the car beside a telephone booth on the corner of the lot. Wilbert Long, Jr., and Eddie Lee Johnson went inside the service station and Eddie Lee put money in a candy machine. He then requested a return of his coin, asserting that the machine did not pay off. Charles Stewart opened the cash register with a key, obtained a refund coin, and closed the register. At that time Eddie Lee Johnson stuck a black .22 caliber pearl handled pistol in Stewart's side and told him to open the register again. Stewart locked the register, pocketed the key, and began a tussle with Eddie Lee Johnson for possession of the gun. As the tussle progressed, Wilbert Long, Jr., tried to open the register which contained about $75 but was unable to do so. Charles Stewart and Eddie Lee Johnson were on the floor struggling and fighting for the gun, and Johnson called for help. Wilbert Long, Jr., thereupon joined the tussle and Eddie Lee Johnson ran out the door and disappeared in a wooded area behind the station. Wilbert Long, Jr., finally got possession of the gun and ran to the blue Mercury Comet which was waiting near the phone booth with Will Johnson, Jr., under the wheel. Long entered the car on the passenger side, and it was driven rapidly away.

Officers H. H. Edwards and P. L. Green were patrolling on Statesville Avenue on the night of 12 February 1971 and received a broadcast over the police radio that there had been an armed robbery at the Statesville Avenue-Interstate 85 Gulf Station. The broadcast gave a description of the 1962 model Mercury Comet. The officers sighted the car about 10 p.m. on Statesville Avenue about one mile from the Gulf Station and followed it to a service station parking lot at Kohler and Statesville Avenue where it stopped. Will Johnson, Jr., was driving the Comet and Wilbert Long, Jr., was riding on the

passenger side. The officers pulled into the parking lot behind them and placed the two men under arrest.

The glove compartment in the Comet was standing open about an inch or more, and Officer Edwards observed a pistol in the glove compartment when he shined his light in the car and asked the occupants for identification. The pistol was seized and offered in evidence as State's Exhibit 2. It was a .22 pistol with pearl handles, one of which was chipped. Another weapon was observed protruding from beneath the front seat and seized by the officers.

William R. Stack testified that he worked at the Little General Store on Monroe Road and that State's Exhibit 2 is a pistol he owned and kept at that store until it was taken in a robbery about three weeks prior to 12 February 1971; that State's Exhibit 2 is "a high standard Double Nine, left hand wheeler, six-inch barrel Colt Forty-four frame, .22 nine shot. It belonged to me. I got it through an inheritance. It had that chip on it, on the left front pearl handle. Prior to February 12, 1971 the last time I saw State's Exhibit No. 2 was about three weeks prior to that, a month possibly. Three or four weeks prior to February 12, 1971, it was taken in a robbery."

Defense evidence consisted of the testimony of the three defendants narrated below.

Eddie Lee Johnson testified that the three defendants went to the Gulf Service Station together to buy gas. He and Long went inside to buy cigarettes, but the station had no cigarette machine so he tried to buy a pack of Nabs. He deposited a dime in the machine, received no merchandise, and requested a refund of his money. Thomas Stewart, the service station attendant, refused a refund because it wasn't his machine, pushed the witness, and ordered him out of the station. "[S]o when he pushed me I pulled my gun out and we got into a fight over the refund" and scuffled for about fifteen or twenty minutes. Wilbert Long, Jr., joined the scuffle and "tried to take the gun away from me. . . . So I turned the gun loose and I went around to the back of the service station." Eddie Lee Johnson further stated that he never had any intention of robbing anyone, made no demands for any money except his refund, and was fighting about the refund. He stated that State's Exhibit 2 is the gun he was carrying that night and

the gun he drew on Charles Stewart. "The gun was fully loaded. I got to the service station in a blue '62 Mercury Comet. A Mercury Comet, blue and white, and Will Johnson was driving the car, and Wilbert Long, Jr., was in the car with me. Just the three of us were in the car." This witness further stated that Will Johnson, Jr., stayed in the car while he and Long entered the service station; that he did not return to the car after the fight because he was afraid. He said he had been convicted of storebreaking and larceny.

Wilbert Long, Jr., testified that he visited the restroom in the service station and when he returned "they were scuffling with the gun and I asked the man what was going on. The man told me there was trying to be a robbery, and then he told me to try to help him get the gun from the boy and I took the gun from both of them, and by that time I ran. I had no intention of hurting anybody. I was not trying to hurt Stewart or Johnson. I was just trying to break up the fight. Mr. Stewart asked me to help him get the gun." He further stated that after he got the gun he thought the best thing to do was "get away from there." He denied having any intention or making any attempt to rob anybody. He admitted on cross-examination that he had been convicted three times for larceny, twice for hit-and-run driving, and once for common-law robbery.

Will Johnson, Jr., testified that they had been to a beer joint called Hoover's Club and stopped at the Gulf Station to buy some gas. They bought and paid for one dollar's worth of gas, and he backed the car up to the telephone booth because he wanted to make a phone call. Eddie Johnson (his brother) and Wilbert Long, Jr., entered the station to get cigarettes and some Nabs. Shortly thereafter he saw Eddie Lee Johnson and Charles Stewart fighting over the gun, saw the gun up in the air, and saw Wilbert Long, Jr., join the fight when he came out of the restroom. He further stated that after Wilbert Long joined the fight Eddie Lee Johnson ran. Shortly thereafter Wilbert Long got the gun, ran from the service station, jumped in the car, and they drove away. He said a customer had intervened to aid Stewart and "the customer picked up an oil can and threw it at my car. That's when I took off."

Will Johnson, Jr., further stated that it was about 10:15 p.m. when he stopped to check his tires and put water in his

radiator and was arrested by the police who came up behind him. His testimony concerning prior offenses and the .22 caliber pistol with the chipped handle (State's Exhibit 2) will be discussed in the opinion.

The jury found each defendant guilty of attempted armed robbery, a violation of G.S. 14-87, and each was sentenced to an active prison term. Their appeal to the Court of Appeals was transferred to the Supreme Court for initial appellate review pursuant to our general order dated 31 July 1970.

*T. O. Stennett, attorney for defendant appellants.*

*Robert Morgan, Attorney General, and Claude W. Harris, Assistant Attorney General, for the State of North Carolina.*

HUSKINS, Justice.

Without objection, Will Johnson, Jr., stated on cross-examination that he had been "convicted of receiving stolen goods; of unlawful concealment. I'm presently on parole. I am on parole for receiving stolen goods and damage to property. I am presently under indictment for armed robbery. Not this case some other case. I have two cases. . . . State's Exhibit No. 2 is my pistol. I traded a .32 pistol which I owned for that pistol right there . . . at a night club. The FOUNTAIN BLEAU [sic] night club. I got it from a guy in there . . . on the 25th of January." Then the following exchange occurred: (Question) "Do you deny getting that pistol, Mr. Johnson, in an armed robbery in a Little General Store?" Objection. Overruled. (Answer) "Yes, I deny it." The question was repeated over objection and again denied.

In rebuttal, the State examined Joseph Lee Gammeter who, over objection, was permitted to testify that William R. Stack was manager of the Little General Store on Monroe Road where Gammeter worked. Mr. Stack owned the pistol identified as State's Exhibit 2 and left it at the store with the witness Gammeter on 18 January 1971. At approximately 10 p.m. on that date the defendant Will Johnson, Jr., entered the store, held it up and, among other things, took the .22 caliber pistol identified as State's Exhibit 2 and carried it away.

With respect to the foregoing rebuttal testimony of Joseph Gammeter, the judge charged the jury as follows:

State v. Long

"Members of the jury, the evidence of Joseph Lewis Gammeter with reference to Will Johnson, Jr., and the taking of the pistol, State's Exhibit No. 2, you will not consider this evidence against either Wilbert Long, Jr., or Eddie Lee Johnson. Nor will you consider it against Will Johnson, Jr., except, as it may tend to contradict him upon his evidence as to where he obtained the pistol, State's Exhibit No. 2, and not otherwise. You will not consider it as substantive evidence."

Defendants assign as error (1) the admission of the foregoing rebuttal testimony of Joseph Gammeter and (2) the judge's charge with respect to it. Defendants contend that where Will Johnson, Jr., got State's Exhibit 2 was a collateral matter and the State was bound by his answer, thus precluding the rebuttal testimony. Furthermore, defendants say that admission of the rebuttal testimony permitted the State to offer evidence of another, separate and distinct armed robbery allegedly committed by Will Johnson, Jr., but of which he had never been convicted. Defendants therefore contend that the rebuttal testimony of the witness Gammeter was erroneously received to their prejudice. We now examine the validity of this contention.

[1] It is a general rule of evidence in North Carolina "that answers made by a witness to collateral questions on cross-examination are conclusive, and that the party who draws out such answers will not be permitted to contradict them; which rule is subject to two exceptions, first, where the question put to the witness on cross-examination tends to connect him directly with the cause or the parties, and second, where the cross-examination is as to a matter tending to show motive, temper, disposition, conduct, or interest of the witness toward the cause or parties." *State v. Jordan,* 207 N.C. 460, 177 S.E. 333 (1934). This has been the rule since *State v. Patterson,* 24 N.C. 346 (1842). *Accord, State v. Carden,* 209 N.C. 404, 183 S.E. 898 (1936); *State v. Spaulding,* 216 N.C. 538, 5 S.E. 2d 715 (1939); *State v. Wilson,* 217 N.C. 123, 7 S.E. 2d 11 (1940); *State v. King,* 224 N.C. 329, 30 S.E. 2d 230 (1944); *State v. Poolos,* 241 N.C. 382, 85 S.E. 2d 342 (1955); *State v. Cutshall,* 278 N.C. 334, 180 S.E. 2d 745 (1971); Stansbury, North Carolina Evidence (2d ed.), Witnesses § 48(3).

[2] The proper test for determining what is material and what is collateral is whether the evidence offered in contradiction would be admissible if tendered for some purpose other than mere contradiction; or in the case of prior inconsistent statements, whether evidence of the facts stated would be so admissible. Stansbury, *supra; State v. Taylor,* 250 N.C. 363, 108 S.E. 2d 629 (1959). *See* Wigmore on Evidence (3d ed.) §§ 1003, 1020. When this test is applied to the challenged evidence, the inapplicability of the foregoing exclusionary rule becomes apparent. The inquiry on cross-examination of Will Johnson, Jr., as to where and how he came into possession of the pistol used in this attempted armed robbery is an inquiry tending to establish an essential element of the very crime for which defendants were on trial rather than an inquiry about a collateral matter. The State is required to show, as an essential element of attempted armed robbery, that the attempt was made with the felonious intent to deprive the owner of his property permanently and to convert it to the use of the taker. *State v. McCrary,* 263 N.C. 490, 139 S.E. 2d 739 (1965). "The taking must be done *animo furandi,* with a felonious intent to appropriate the goods taken to some use or purpose of the taker." *State v. Smith,* 268 N.C. 167, 150 S.E. 2d 194 (1966).

[3, 4] In this case each defendant, testifying in his own behalf and in behalf of his codefendants, denied having any intention or making any attempt to commit robbery. The disturbance inside the service station was explained as a fight over the refund of a dime which had been deposited in a machine that delivered no merchandise. Thus the State's allegation and evidence tending to show a felonious intent to rob, and defendants' denial with evidence tending to show a complete absence of such intent, placed in issue a vital fact with the burden on the State to prove its existence beyond a reasonable doubt. The rebuttal testimony of Joseph Gammeter was competent and material as substantive evidence bearing upon a fact in issue—the intent existing in the mind of Will Johnson, Jr., when he and his codefendants approached and entered the Gulf Service Station on the night in question. For this reason the cross-examination of Will Johnson, Jr., concerning the pistol used in the commission of the crime for which he was on trial was not an inquiry concerning a collateral matter, and the State was not bound by his answer. The fact that the court erroneously limited consideration of the rebuttal testimony against Will Johnson, Jr., to

State v. Long

mere contradiction or impeachment of him was favorable to said defendant and he is in no position to complain. *State v. Quick,* 150 N.C. 820, 64 S.E. 163 (1904) ; *State v. Fowler,* 151 N.C. 731, 66 S.E. 567 (1909) ; *State v. Chase,* 231 N.C. 589, 58 S.E. 2d 364 (1950). It was an error prejudicial to the State and not to him.

But defendants say admission of the rebuttal testimony violated another well-settled rule of evidence to the effect that while prosecuting for one crime the State cannot offer evidence to show defendant committed another criminal offense. This requires an examination of the rule and the exceptions to it.

[5] It is a general rule of evidence that in a prosecution for a particular crime the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense. Stansbury, North Carolina Evidence (2d ed.) § 91. The rule and eight well-defined exceptions to it are thoroughly discussed and documented in a scholarly opinion by Ervin, J., in *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364 (1954). The second exception to the rule is expressed in *McClain* as follows: "2. Where a specific mental intent or state is an essential element of the crime charged, evidence may be offered of such acts or declarations of the accused as tend to establish the requisite mental intent or state, even though the evidence discloses the commission of another offense by the accused."

[6] The rebuttal testimony of Joseph Gammeter falls within the second exception to the rule, quoted above, and was competent as substantive evidence bearing upon the criminal intent of Will Johnson, Jr., on the night of 12 February 1971 when he and his codefendants entered the Gulf Service Station they are charged with attempting to rob. His intent is a relevant but disputed fact which the challenged evidence tends to prove. It will not be excluded merely because it also shows Will Johnson, Jr., to have been guilty of an independent crime. Stansbury, North Carolina Evidence (2d ed.) § 91; *State v. Dawson,* 278 N.C. 351, 180 S.E. 2d 140 (1971).

[7] The court properly instructed the jury not to consider the rebuttal evidence against Wilbert Long, Jr., or Eddie Lee Johnson, and the law presumes the jury followed the judge's instructions. *State v. Moore,* 276 N.C. 142, 171 S.E. 2d 453 (1970);

*State v. Ray,* 212 N.C. 725, 194 S.E. 482 (1938). Hence they have in nowise been prejudiced.

Defendants having failed to show prejudicial error, the verdicts and judgments must be upheld.

*No error.*