State v. Scott

STATE OF NORTH CAROLINA v. DONNY D. SCOTT

No. 7226SC795

(Filed 22 November 1972)

1. Criminal Law § 88; Witnesses § 8— contradiction of answers elicited on cross-examination — collateral matters

It is a general rule of evidence in this State that answers made by a witness to collateral questions on cross-examination are conclusive, and that the party who draws out such answers will not be permitted to contradict them except to connect the witness with the cause or the parties or to show motive or disposition of the witness toward the cause or the parties.

2. Criminal Law § 88; Witnesses § 8— cross-examination — contradictory evidence — collateral matters — test

The proper test for determining what is material and what is collateral is whether the evidence offered in contradiction would be admissible if tendered for some purpose other than mere contradiction.

3. Criminal Law § 88; Witnesses § 8— cross-examination — contradictory evidence improperly admitted

Where a witness's testimony concerning her observations of defendant's witness Clow in her backyard served only to contradict Clow's denial on cross-examination that he had been there, the trial court erred in allowing the witness to testify since Clow's presence or absence in the witness's yard clearly involved a collateral matter.

APPEAL by defendant from *Friday, Judge,* 15 May 1972 Schedule B Criminal Session of Superior Court held in MECK-LENBURG County.

By indictment proper in form defendant was charged with (1) the felonious breaking and entering on 10 June 1971 of a particularly described premises occupied by one Willie Daniel Hartsell and (2) the felonious larceny after such breaking and entering of a color television set. The State presented the testimony of Willie D. Hartsell, who testified that he left his house on the Huntersville-Mount Holly Highway about 6:40 a.m. on 10 June 1971 and that when he returned about 4:30 p.m. he found his house had been broken into and his color television set valued at $600.00 was missing. The State then presented the testimony of Danny Reid Zeigler, who testified in substance to the following: Zeigler and defendant are first cousins. On 10 June 1971 Zeigler lived with his parents on Eastfield Road in the northern part of Mecklenburg County. It is approxi-

mately nine miles from Mr. Hartsell's house to where Zeigler was living. Defendant's parents lived on the same road about half a block away. About 10:00 or 11:00 a.m. on 10 June 1971 Zeigler and defendant went to defendant's mother's house and borrowed her car to go fishing. They arrived at a pond off of Huntersville-Mount Holly Road about noon. After fishing two or three hours they drove up the road looking for a house to break in. Between 3:00 and 4:00 p.m. they broke into the Hartsell residence and stole the television set, carrying it away in the automobile. Later that afternoon they sold the television for $100.00, which they split. On cross-examination Zeigler testified that he knew Donald Clow but did not see him at the pond that day.

Defendant testified to the following: About 10:30 a.m. on the day in question Zeigler had come to his trailer and asked him to go fishing. Defendant told Zeigler to go ahead and he would meet him at the pond. After Zeigler left, defendant went to his mother's home and borrowed her car. He then drove to Derrick's Trailer Park, where he picked up a friend, Donald Clow, about 11:30. Defendant and Clow then drove to the pond, where they found Zeigler already fishing. About 1:00 p.m. Zeigler asked defendant if he could borrow defendant's mother's car, as he wanted to go get more fishing bait and his own car was not running good. Defendant told him he could, whereupon Zeigler left in defendant's mother's car and did not return until after 4:00 p.m. They continued fishing twenty or thirty more minutes, and then defendant drove Clow home. Zeigler left about ten or fifteen minutes before they did. Clow was with defendant the entire time Zeigler was gone.

Clow, called as a witness by the defense, corroborated defendant's testimony.

The jury found defendant guilty as charged in the bill of indictment. On the verdict finding defendant guilty of felonious breaking and entering, judgment was entered sentencing defendant to prison for a period of not less than five nor more than seven years. On the verdict finding defendant guilty of larceny, prayer for judgment was continued from term to term for a period of five years. From the judgment imposing the prison sentence, defendant appealed.

---

State v. Scott

---

*Attorney General Robert Morgan by Associate Attorney George W. Boylan for the State.*

*Cole & Chesson by Calvin W. Chesson for defendant appellant.*

PARKER, Judge.

[1] On cross-examination of defendant's witness, Clow, the solicitor asked the following question and received the following answer:

Question: "All right. Mr. Clow, on the morning of June 10th, 1971, between eight and 9:45 in the morning, weren't you in the backyard of Mrs. Saunders' home on Eastfield Road?"

Answer: "No, sir. I don't even know her."

In rebuttal, the State called Mrs. J. R. Saunders, who testified that she lived on Eastfield Road, that the Zeiglers lived about three-fourths of a mile further down the road, and the Scotts lived at approximately the same location. Over defendant's objections Mrs. Saunders was permitted to testify that about 9:45 a.m. on 10 June 1971 she observed defendant's witness, Donald Clow, and another person, who was not identified, in the backyard of her home trying to lift a motor from her husband's boat, she screamed, and Clow and the other person ran away. The admission of this testimony is the basis of defendant's only assignment of error. This assignment of error must be sustained.

"It is a general rule of evidence in North Carolina 'that answers made by a witness to collateral questions on cross-examination are conclusive, and that the party who draws out such answers will not be permitted to contradict them; which rule is subject to two exceptions, first, where the question put to the witness on cross-examination tends to connect him directly with the cause or the parties, and second, where the cross-examination is as to a matter tending to show motive, temper, disposition, conduct, or interest of the witness toward the cause or parties.'" *State v. Long,* 280 N.C. 633, 639, 187 S.E. 2d 47, 50.

"The principal reasons of the rule are, undoubtedly, that but for its enforcement the issues in a cause would

be multiplied indefinitely, the real merits of the controversy would be lost sight of in the mass of testimony to immaterial points, the minds of jurors would thus be perplexed and confused, and their attention wearied and distracted, the costs of litigation would be enormously increased, and judicial investigation would become almost interminable." 58 Am. Jur., Witnesses, § 784, p. 433.

[2] The proper test for determining what is material and what is collateral is whether the evidence offered in contradiction would be admissible if tendered for some purpose other than mere contradiction; or in the case of prior inconsistent statements, whether evidence of the facts stated would be so admissible. *State v. Long, supra; State v. Taylor,* 250 N.C. 363, 108 S.E. 2d 629; 3A Wigmore, Evidence, §§ 1003, 1020 (Chadbourn rev. 1970) ; 58 Am. Jur., Witnesses, § 785.

[3] In the case now before us, had Mrs. Saunders' testimony that she saw Clow in her backyard on the morning of 10 June 1971 placed him at such a distance as to make it unlikely that he could have been with defendant later that day during the time and at the places defendant and Clow testified they were together, such testimony would have tended directly to rebut defendant's alibi and would have been admissible for that purpose. All of the evidence, however, indicates that the home of Mrs. Saunders was sufficiently near to all places relevant to this case that the fact that Clow may have been in her backyard at 9:45 in the morning in no way tends to show that he could not also have been in defendant's company later in the day at all of the places and times they testified they were together. Therefore, Mrs. Saunders' testimony in no way tended to rebut defendant's alibi defense and its only purpose was to contradict Clow's denial that he had been in her yard. This was clearly a collateral matter and one which in no way tended to connect Clow with the defendant or with the State's case against the defendant, nor did it in any way tend to show Clow's "motive, temper, disposition, conduct, or interest toward the cause or parties."

Evidence that Clow attempted to steal a motor from the boat in Mrs. Saunders' backyard certainly reflected upon his good character, but as a witness his character was only collaterally in issue. While the solicitor was free to cross-examine him in an attempt to show his bad character, his answer on

cross-examination was conclusive and could not be contradicted by other testimony. Stansbury, N. C. Evidence 2d, § 111, p. 254. "Thus, if the witness denies the alleged misconduct, the examiner must 'take his answer,' not in the sense that he may not further cross-examine to extort an admission, but in the sense that he may not call other witnesses to prove the discrediting acts." McCormick, Handbook of the Law of Evidence," § 42, p. 89.

In this case the trial court committed error in overruling defendant's timely objections and motions to strike Mrs. Saunders' testimony concerning her observations of defendant's witness Clow.

For the error noted, defendant is entitled to a

New trial.

Judges CAMPBELL and MORRIS concur.