STATE OF NORTH CAROLINA v. MARION COX AND RUDOLPH NOLLY

No. 30

(Filed 2 March 1976)

1. Homicide § 20— photographs of deceased — admissibility

The trial court in a second degree murder case did not err in allowing into evidence a photograph of the deceased as he appeared in the hospital on the day he died, though the trial court gave no limiting instruction, since no request for such instruction was made; moreover, the photograph was not inadmissible because it was not made at the time of the crime or because it was gory or gruesome.

2. Criminal Law §§ 73, 79, 95; Constitutional Law § 31— statement of companion in crime — admissibility as part of res gestae

In a second degree murder prosecution the trial court did not err in allowing a State's witness to testify that after four intruders entered a rooming house, the scene of the crime, one defendant "drawed back" to hit him with an ax but one of the other intruders said, "Rudy, don't kill him right now," since such testimony was competent as part of the *res gestae;* moreover, the rule of *Bruton v. U. S.,* 391

State v. Cox

U.S. 123, that the extrajudicial confession of one defendant who does not testify, implicating the other defendant, cannot be admitted into evidence was not applicable to exclude the testimony, since the intruder's statement was not a confession and since the intruder was not on trial as a codefendant.

3. **Criminal Law § 73— declarations as part of res gestae**

Declarations are competent as part of the *res gestae* if the declaration (1) is of such spontaneous character as to preclude the likelihood of reflection and fabrication, (2) is made contemporaneously with the transaction, or so closely connected with the main fact as to be practically inseparable therefrom, and (3) has some relevancy to the fact sought to be proved.

4. **Criminal Law § 66— in-court identification of defendants — observation at crime scene as basis**

Evidence was sufficient to support the trial court's determination that the in-court identification of defendants by two witnesses was based on observation at the crime scene and that the credibility of the witnesses and the weight of their identification testimony was for the jury where such evidence tended to show that the witnesses observed defendant Cox in the well lighted room of the boarding house for 30-45 minutes while he held a gun on them, one witness observed defendant Nolly both with and without a mask as he entered the room and beat his victim, and the other witness recognized defendant Nolly's voice and observed him with and without a mask as he beat his victim.

DEFENDANTS appeal from judgments of *Lewis, J.*, 14 July 1975 Schedule "B" Criminal Term, MECKLENBURG Superior Court.

In separate bills, drawn in conformity with G.S. 15-144, defendants were charged with the murder of Donald Hendrix on 27 March 1975 in Mecklenburg County. The trial judge submitted only murder in the second degree, voluntary manslaughter or not guilty as permissible verdicts. The jury convicted Marion Cox of voluntary manslaughter and Rudolph Nolly of second degree murder. Cox was sentenced to twenty years and Nolly to life imprisonment. Each defendant appealed and both appeals were docketed in the Court of Appeals. We allowed defense motions to bypass the Court of Appeals in the Cox case and to transfer Nolly's appeal to this Court where it should have been docketed initially. Both appeals were argued in this Court on 11 February 1976.

The State's evidence tends to show that on 27 March 1975 at about 10:30 p.m., Leon Caldwell and Donald Hendrix, who was fifty-two years old and physically disabled, were watching television in Caldwell's room on the second floor of a Charlotte

rooming house. Another roomer named Willie Camp was downstairs drinking beer and listening to a jukebox with Don Massey, Timmy Reeves and Patricia Stevenson.

Timmy Reeves opened the front door in response to a knock and four armed men entered the house. They asked to see "Don" and one of them, later identified as Theodore Teeter, said to one of the others, "Buck, watch the door." The man referred to as "Buck" held his .22 caliber rifle on Camp, Reeves, Massey and Stevenson while the other three intruders went upstairs. "Buck" had a blue and white scarf around his face from the nose down and had on a maroon or blue leather jacket. The faces of all four men were masked in some fashion—by the use of a woman's stocking, a scarf or, later, a black plastic garbage bag.

The three men who went upstairs burst into the room occupied by Caldwell and Hendrix, beat both occupants and pushed them downstairs. The intruder wearing a tan jacket, black hat and a stocking mask over his face beat Hendrix in the face, saying, "Where's the dope?" Hendrix replied that he had no dope. Hendrix was then kicked, struck with a chair and a crutch, and then taken through the den to the kitchen and out to the back porch. Camp, Caldwell, Massey, Reeves and Stevenson were forced to empty their pockets and were instructed to tell Hendrix to reveal where the dope was hidden "or else they were going to have to kill him." The man in the tan jacket lifted an ax to strike Camp, but another in the group said, "No, Rudy, don't kill them now." The man in the tan jacket then went into the kitchen, removed his stocking mask and substituted a mask fashioned from a black plastic garbage bag. He then returned to the porch and began beating Hendrix with the ax.

The four intruders were in the house about forty-five minutes. When another knock was heard at the door, Camp ran to open it and ran on out to call the police. The four assailants then left through the back door.

The police arrived about 11:30 to find puddles of blood in several places, the downstairs in disarray, and Donald Hendrix lying in the back yard badly beaten. Hendrix later died as a result of the "blunt force trauma" inflicted during the attack upon him.

Theodore Teeter was identified as the accomplice who, during the commission of the crime, had referred to defendant

Cox as "Buck" and defendant Nolly as "Rudy." Willie Camp later identified a photograph of Cox, and Leon Caldwell identified a photograph of Teeter. Timmy Reeves picked out a photograph of both Cox and Teeter. At the trial, Camp identified Cox as "Buck" and Nolly as "Rudy." Camp stated he had known defendant Nolly for seven or eight years and recognized his voice.

Leon Caldwell at trial identified defendant Nolly as the man in the tan jacket who hit Hendrix with the ax and Cox as the man who held the rifle on those downstairs. He said he was in Cox's presence for forty-five minutes and that he had never seen Nolly before the incident.

Timmy Reeves positively identified Cox in open court as the man who held the rifle on the people downstairs. Reeves said he observed Cox from a distance of eight feet for about thirty minutes, had known Cox previously, and had seen him several times during the summer of 1974. He said he based his in-court identification "on the fact that I saw him, Cox, that night." Reeves said he didn't know the man in the tan jacket and never really got a good look at him.

Don Massey identified Cox in open court as the man wearing the blue scarf and dark leather jacket who held a rifle on the people downstairs. He said he observed Cox under good lights for thirty minutes and was able to identify Cox by his eyes, hair, profile and face.

Evidence for defendant Cox, including his own testimony, tends to show that he was at the home of his sister with his sister and his girl friend on the night of 27 March 1975. Cox denied being at the rooming house where Hendrix was killed, and denied ever having known Camp, Caldwell, Reeves, Massey or the deceased. He testified he injured his ear on 18 or 19 March 1975, went to a hospital for treatment, and had to wear a gauze patch on the injured ear for two weeks thereafter. The State's witnesses who identified him as one of the intruders testified they noticed nothing unusual, such as a gauze patch, about the ears of the man who held the rifle on them.

It was stipulated that defendant Cox was incarcerated in the North Carolina correctional system between 9 January and 24 November, 1974, a period embracing the summer months during which Timmy Reeves testified he saw Cox in Charlotte several times.

Defendant Nolly did not testify but offered in evidence the transcript of the testimony of State's witness Leon Caldwell on voir dire. Caldwell's testimony tends to show that on 27 March 1975 he and Donald Hendrix were watching television about 10:30 p.m. when he heard a loud booming noise downstairs. When he opened his door there was a man in the hall with a tan jacket on and "that man is Rudolph Nolly." Nolly had a gun in his hand and began beating Caldwell. "I saw into his face then, and later he had a black plastic bag covering his face. This was when he was swinging the ax and the bag completely slid off his face. I noticed sideburns and a slight moustache on Nolly. I looked at some photographs when I went down to the police department and I selected three people from the photographs. One was Nolly, one was Teeter and one was Cox."

In his cross-examination on voir dire Caldwell stated that the man with the gun standing at the door when he opened it had a bandana and a scarf that covered his nose "and I didn't notice anything unusual about his ears." He said the officers told him with respect to the photographs, "it is up to you to pick them, if there is any that you recognize on those photographs, please point them out and I will pick them up." He said he was shown six, eight or ten photographs and identified the pictures "but I just didn't know which one of them was Rudy Nolly and which one was Marion Cox."

*Lawrence W. Hewitt, attorney for defendant appellant Cox.*

*Michael J. Blackford and Donald M. Tepper, attorneys for defendant appellant Nolly.*

*Rufus L. Edmisten, Attorney General; Charles M. Hensey, Assistant Attorney General, for the State of North Carolina.*

HUSKINS, Justice.

[1]  Both defendants objected to the introduction of a photograph of the deceased Donald Hendrix as he appeared in the hospital on the day he died. However, the assignment of error based on this exception is brought forward and discussed in the brief of defendant Cox only. Accordingly, under Rule 28, Rules of Appellate Procedure, this assignment is deemed abandoned by defendant Nolly. Our discussion relates only to the appeal of Marion Cox.

State's witness Willie Lee Henry testified that the deceased Donald Hendrix was his brother; that he saw his brother at the hospital on the night he died, and that State's Exhibit 2 was a photograph of his brother "the way I saw him over at the hospital." Defendant Cox argues (1) the photograph was not properly identified and authenticated, (2) it was irrelevant because it was made after the body had been removed to the hospital, and (3) the trial court failed to instruct the jury that it was admitted for illustrative purposes only. These are the bases for Cox's first assignment of error.

We find no prejudicial error in any of these respects. The photograph was identified by the witness as a photograph of his brother which depicted the way he looked at the hospital the night he died. Photographs are not inadmissible because they were not made at the time of the event, *State v. Lester,* 289 N.C. 239, 221 S.E. 2d 268 (1976), *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241 (1969), or because they are gory or gruesome, *State v. Frazier,* 280 N.C. 181, 185 S.E. 2d 652 (1972). See 1 Stansbury, North Carolina Evidence § 34 (Brandis rev. 1973). While it is true that the trial judge gave no limiting instruction, this was not error because there was no request for such instruction. *State v. McKissick,* 271 N.C. 500, 157 S.E. 2d 112 (1967) ; *State v. Cade,* 215 N.C. 393, 2 S.E. 2d 7 (1939). In any event, no possible prejudice resulted from the introduction of this photograph because Cox never really contested the fact that Hendrix died as the result of an assault made upon him at the rooming house on 27 March 1975. His defense was alibi. This assignment is overruled.

[2]   Willie Camp, a State's witness, testified over objection that after the four intruders had entered the rooming house, one of them named Theodore Teeter said, "Watch the door, Buck," referring to Marion Cox who was known by that nickname. Over objection Camp further testified that during the robbery and assault on the deceased Donald Hendrix, Rudolph Nolly "drawed back" to hit him with the ax and Theodore Teeter said, "Rudy, don't kill him right now." Admission of this evidence constitutes Cox's third and Nolly's fourth assignments of error.

There is no merit in these assignments. This testimony was competent as part of the res gestae. "Exclamations or declarations spontaneously evolved by the event and relevant to the inquiry are a part of the res gestae, and testimony thereof is

competent as an exception to the hearsay rule." 3 Strong, N. C. Index 2d, Evidence § 35 (1967), and cases there cited.

[3] Declarations are competent as part of the res gestae if the declaration (1) is of such spontaneous character as to preclude the likelihood of reflection and fabrication, (2) is made contemporaneously with the transaction, or so closely connected with the main fact as to be practically inseparable therefrom, and (3) has some relevancy to the fact sought to be proved. *Hargett v. Ins. Co.*, 258 N.C. 10, 128 S.E. 2d 26 (1962); *Little v. Brake Co.*, 255 N.C. 451, 121 S.E. 2d 889 (1961); *Coley v. Phillips*, 224 N.C. 618, 31 S.E. 2d 757 (1944); 1 Stansbury's North Carolina Evidence, Hearsay § 164 (Brandis rev. 1973).

In *State v. Goines*, 273 N.C. 509, 160 S.E. 2d 469 (1968), the prosecuting witness testified over objection that during defendant's assault upon her with intent to commit rape, the occupants of the nearby Vance Apartments "up to the third floor had raised their window and was yelling for him to . . . turn that woman aloose." Held: This testimony was competent as part of the res gestae. So it is here.

[2] Defendants rely on legal principles enunciated in *Bruton v. United States*, 391 U.S. 123, 20 L.Ed. 2d 476, 88 S.Ct. 1620 (1968), followed and applied by this Court in *State v. Fox*, 274 N.C. 277, 163 S.E. 2d 492 (1968), that the extrajudicial confession of one defendant who does not testify, implicating the other defendant, cannot be admitted into evidence. Those principles are not relevant in the factual context of this case. Here, Teeter's statement is not a confession. Moreover, Teeter is not on trial as codefendant. In *Bruton* the confession made by a codefendant was the result of an in-custody interrogation long after the crime was committed. The same distinctions were present in the *Fox* case. Thus *Bruton* and *Fox* are not authority for excluding the evidence challenged here. These assignments are therefore overruled.

[4] Defendants contend their in-court identification by State's witnesses Willie Camp and Leon Caldwell should have been suppressed. They argue that these witnesses had no adequate opportunity to observe defendants, thus rendering their testimony so weak and unreliable that it should have been excluded. Cox's fourth and Nolly's third and fifth assignments of error are based on these contentions.

Before admitting the evidence challenged by these assignments, the trial judge conducted an examination of the witnesses

in the absence of the jury. On that voir dire Leon Caldwell, speaking with reference to his opportunity to observe defendant Nolly, testified that when he opened the door there was a man in the hall with a tan jacket on; that the man rushed in and commenced beating him; that he saw the man's face then and "that man was Rudolph Nolly"; that initially Nolly had a stocking mask over his face but later changed to a black plastic bag; that when Nolly was swinging the ax in the assault upon Donald Hendrix, "the bag completely slid off his face"; that he noticed sideburns and a slight moustache; and that downstairs, while sitting on the sofa, he saw Nolly beating Hendrix on the well lighted back porch. Leon Caldwell also testified that he later identified a photograph of Nolly at the law enforcement center. (This part of his testimony was contradicted by the investigating officer.)

With respect to his opportunity to observe defendant Cox, Leon Caldwell testified on voir dire that he was forced to sit on the sofa with the other captives for more than thirty minutes during which he observed Cox while Cox held a rifle on them. The room was well lighted by a 75-watt bulb. Cox was wearing a bandana and a dark blue scarf with dots on it that covered only his mouth and nose. He had on tennis shoes and a dark coat and was about 5 feet 8 inches tall. Caldwell further testified that he picked out a photograph of Cox from ten to twenty photographs he observed in the law enforcement center. (The investigating officer had no record or recollection of such identification.)

The witness Willie Camp testified on voir dire that he had known defendant Nolly for seven or eight years—"we were brought up in Brooklyn together"; that he had been around Nolly long enough to know Nolly's voice and to recognize it; that on the night in question Nolly was dressed in jeans and a long-sleeved shirt and had a stocking mask over his face which he later replaced with a black plastic bag; and that he observed Nolly's face when the plastic bag fell off while he was beating Hendrix. With respect to defendant Cox, Willie Camp testified, "I have seen him on Seventh Street standing around. . . . I saw him that night about 45 minutes," and pointed to Cox as the man he saw in the rooming house the night Donald Hendrix was killed. He said Cox was known by the name of "Buck" on the street.

The trial judge made detailed findings of fact and concluded that the identification of defendants by Leon Caldwell and Willie Camp was independent in origin and based on personal observation of defendants for thirty to forty-five minutes during the robbery and assault on Donald Hendrix. The evidence was therefore admitted over objection.

Defendants concede that ordinarily the credibility of witnesses and the weight to be given their testimony is exclusively a matter for the jury. Even so, they argue that this rule does not apply when the only testimony justifying submission of the case to the jury is inherently incredible and in conflict with the physical conditions established by the State's own evidence. Defendants contend the testimony of Caldwell and Camp falls in that category and rely on *State v. Miller*, 270 N.C. 726, 154 S.E. 2d 902 (1967), as authority for their position. This requires an examination of the *Miller* case.

In *Miller* the State's evidence was ample to show that the building of the Hall Oil Company in Charlotte was broken and entered by two or more men on the night of 28 September 1966 and that its safe, containing money and other valuables, was then damaged in an effort to force it open. The exterior of the building and surrounding grounds were well lighted by nearby street lights, floodlights at the front and back, and spotlights attached to the eaves. The building was 286 feet from a Texaco service station with a vacant lot between. The only evidence tending to identify defendant as one of the perpetrators of the offense was the testimony of a sixteen-year-old witness who identified defendant in a lineup as one of the persons he had seen at the scene of the crime. The witness was never closer than 286 feet to a man he saw running along the Hall Oil Company building. The witness had never seen the man theretofore and testified he saw this man run once in each direction, stop at the front of the building, peep around it and look in the witness's direction. The witness could not describe the color of the man's hair or eyes, or the color of his clothing, except that his clothes were dark. We held that the uncontradicted testimony as to the physical facts disclosed that the witness's observation of defendant was insufficient to support the subsequent identification of defendant with that degree of certainty which would justify submission of the case to the jury. Our holding was based on the general rule that evidence which is inherently impossible or in conflict with indisputable physical

facts or laws of nature is not sufficient to take the case to the jury. *Jones v. Schaffer,* 252 N.C. 368, 114 S.E. 2d 105 (1960).

The holding in *Miller* is sound and we reaffirm it. But it has no application where, as here, "there is a reasonable possibility of observation sufficient to permit subsequent identification." *State v. Miller, supra.* In such event, the credibility of the witness and the weight of his identification testimony is for the jury.

Here, the witness Caldwell had an opportunity to view Nolly with his mask on and with it off. He observed Nolly while the attack was being made upon Hendrix. He observed Cox in a well lighted room for more than thirty minutes while Cox held a rifle on him and others. Although Cox's mouth and nose were covered, his eyes, forehead, ears, head shape and hair were readily visible. The witness Camp had known Nolly for seven or eight years and recognized his voice. He also saw Nolly's face when the plastic bag fell off. Thus the record discloses plenary, competent evidence *corroborated by the physical facts and attendant circumstances,* and by other State's witnesses as well, to support the findings of the trial judge. Such findings are conclusive when supported by competent evidence, and no reviewing court may set aside or modify them. *State v. Simmons,* 286 N.C. 681, 213 S.E. 2d 280 (1975); *State v. Taylor,* 280 N.C. 273, 185 S.E. 2d 677 (1972); *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1 (1966), cert. denied, 386 U.S. 911, 17 L.Ed. 2d 784, 87 S.Ct. 860 (1967).

When viewed correctly, the assignments of error under discussion and the arguments supporting them go only to the weight of the identification testimony of Caldwell and Camp and not to its competency. Contradictions and discrepancies, even in the State's evidence, are for the jury to resolve and do not warrant nonsuit. *State v. Mabry,* 269 N.C. 293, 152 S.E. 2d 112 (1967); 2 Strong, N. C. Index 2d, Criminal Law, § 104 (1967), and cases there cited. The identification testimony of Caldwell and Camp was competent and properly admitted. The assignments challenging its competency are overruled.

The bills of indictment upon which defendants were tried charge murder in the first degree. G.S. 14-17; G.S. 15-144. The State's evidence is sufficient to show murder committed in the perpetration of a robbery and support a felony murder conviction. For reasons not appearing in the record, the capital

charge was not submitted to the jury. In light of the vicious and brutal manner in which Donald Hendrix was beaten to death, it would appear that justice has been tempered with mercy and defendants have no just cause to complain of the verdicts rendered or the sentences pronounced thereon.

In the trial below we find

No error.