STATE OF NORTH CAROLINA v. LARRY GREEN

No. 32

(Filed 29 December 1978)

1. Criminal Law § 66.20— identification testimony—no pretrial identification procedures—findings not required

The trial court was not required to make formal findings of fact and conclusions of law regarding the independence and reliability of an assault

State v. Green

victim's in-court identification since there were no pretrial identification procedures and therefore no relevant facts upon which to base a finding of the identification's independent origins.

**2. Criminal Law § 66.18 — identification testimony — no pretrial identification procedures — voir dire not required**

Though a voir dire is not required to determine the admissibility of identification testimony where no pretrial identification procedures have been conducted, it would be the better practice to conduct a voir dire, prior to the admission of the testimony, where there has been a specific objection that the identification testimony is inherently unreliable or incredible, and, if a voir dire is held, then the sole determination for the trial judge is whether or not the witness had a reasonable possibility of observation sufficient to permit subsequent identification.

**3. Criminal Law § 66.1 — identification testimony — opportunity for observation**

In a prosecution for burglary, assault with intent to rape and assault with a deadly weapon, the trial court properly overruled defendant's motion to suppress the victim's identification testimony where the evidence on voir dire tended to show that the alleged assault took place in the victim's apartment; when defendant first opened the apartment door in his efforts to escape, the victim saw his lighted profile, and on his second opening of the door she saw his full face; the light was on in the hall outside the apartment and lit up the doorway as the man opened the door; and defendant was but a few feet from the victim at the time she saw his face.

**4. Criminal Law § 106.3; Burglary and Unlawful Breakings § 5.11; Assault and Battery § 14.5 — burglary — assault with deadly weapon**

In a prosecution for burglary, assault with intent to rape and assault with a deadly weapon, defendant's contention that nonsuit should have been allowed because the victim's identification testimony was inherently incredible and because no other evidence was found at the scene of the crime which would point to defendant's guilt is without merit, since the court found on voir dire that the victim's identification testimony was not inherently incredible; the State established by ample evidence that a crime had been committed; the victim's competent identification testimony was sufficient to take to the jury the question whether the defendant was the perpetrator of the crime; and the absence of physical evidence corroborating proper identification testimony did not warrant nonsuit.

**5. Criminal Law § 89.1 — character of witness's associate — question improper — no prejudice**

Though the trial court erred in permitting the prosecutor to ask an alibi witness two questions concerning the character of the witness's associate, defendant was not prejudiced since the witness in answering the questions disavowed any knowledge of her associate's use of drugs; the prosecutor did not further inquire into the matter or attempt to badger the witness; and there was no indication that the questions were unfounded or asked in bad faith.

**6. Criminal Law § 89.9— impeachment—prior inconsistent statement—extrinsic evidence admissible**

The State could properly introduce extrinsic testimony concerning an alibi witness's prior inconsistent statement with respect to his waking and sleeping hours and defendant's whereabouts where such statement conflicted with the subject matter of his testimony at trial.

Justice BRITT took no part in the consideration or decision of this case.

APPEAL by defendant from *Browning, J.*, at the 9 January 1978 Criminal Session of NEW HANOVER Superior Court.

Defendant was tried and convicted of first degree burglary, assault with intent to commit rape and assault with a deadly weapon inflicting serious bodily injury. From a sentence of life imprisonment on the burglary charge and a concurrent sentence of five years on the assault charges, defendant appealed.

Motion to bypass the Court of Appeals on the assault charges was allowed.

The State's evidence tends to show that in the early morning hours of 11 August 1978 the apartment of Juanita Brown was broken into. Ms. Brown was awakened when she felt a man kneeling beside her bed. The man held a knife to her throat, and told her not to move and to do what he said or he would kill her. He ordered her to remove her nightgown and she complied. He then took off his pants and attempted to insert his penis into her vagina. She grabbed the assailant's knife and her hand was severely cut during the ensuing struggle. The assailant then jumped up and ran from her bedroom to the front door of the apartment. When he tried to open the door of the apartment, a chain latch caught the door, and, by means of a light shining in from the hall, the prosecuting witness was able to identify her assailant as defendant, a janitor at the courthouse in New Hanover County where the prosecuting witness also worked. After he removed the chain latch, the assailant left the apartment.

The defendant testified in his own behalf, and denied the commission of the crimes. He offered further evidence tending to establish an alibi. Other facts pertinent to the decision of this case will be set out in the opinion.

*Attorney General Rufus L. Edmisten by Associate Attorney Thomas F. Moffitt for the State.*

*Roy C. Bain for defendant appellant.*

MOORE, Justice.

At trial, the victim, Juanita Brown, was asked whether she was able to see her assailant when he first opened the door in his attempt to escape. A general objection was entered and a *voir dire* held, in the absence of the jury, on her identification testimony. On *voir dire* Ms. Brown testified that when the assailant first opened the door she saw his profile and then recognized him as the janitor at the courthouse, where she too worked. The second time the man opened the door she saw his entire face. Ms. Brown then identified defendant as the man who had attempted to rape her. On cross-examination she testified that she did not tell officers who the assailant was until she got to the hospital some forty-five minutes after officers first arrived at her apartment. Ms. Brown further testified on cross-examination that she had but a split second to view her assailant's face.

Officer F. G. Saxton testified that, on his arrival at Ms. Brown's apartment, she gave him a general description of her assailant. She did not tell him who the assailant was, but when he first saw her "she was emotionally upset and had some pain." At the hospital she told him that her assailant was the janitor who worked at the sheriff's department. Detective Cecil Gurganious and attorney Peter Grear testified that Ms. Brown told them at the hospital that she was almost certain that the man who broke into her apartment was a custodian around the courthouse. At the conclusion of this evidence the trial judge denied defendant's motion to suppress Ms. Brown's identification testimony, and, though expressing doubt that findings were required, said that findings of fact would be placed in the record prior to the end of trial. For purposes of the record, findings of fact and conclusions of law were made sometime after verdict and judgment were entered. The facts found by the trial judge are substantially similar to those set out above. The trial judge concluded that Ms. Brown had ample opportunity to view her assailant, that her identification testimony was a matter of fact for the jury to assess, and

that none of the defendant's constitutional rights were violated by admission of her identification testimony.

The defendant argues that the trial court erred in failing to make findings of fact and conclusions of law prior to his denial of defendant's motion to suppress the identification testimony, and further argues that, as a matter of law, there was not ample evidence elicited on *voir dire* to sustain Ms. Brown's identification of the defendant. Defendant contends that admission of the identification testimony constitutes a violation of standards set forth in *Neil v. Biggers*, 409 U.S. 188, 34 L.Ed. 2d 401, 93 S.Ct. 375 (1972).

[1] The five factors set forth in *Biggers, supra,* and in *State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974), for the assessment of the reliability of identification testimony were intended to apply to those cases where there has been a showing that a pretrial identification procedure, conducted by State officials, is in some manner impermissibly suggestive. *Biggers* mandates that, if there is a showing of an impermissibly suggestive pretrial identification procedure, there must be a determination, in accordance with the factors listed therein, whether the witness's identification of the defendant at trial will be reliable and of an origin independent of the suggestive pretrial procedure. *See also Manson v. Brathwaite*, 432 U.S. 98, 53 L.Ed. 2d 140, 97 S.Ct. 2243 (1977); *Simmons v. United States*, 390 U.S. 377, 19 L.Ed. 2d 1247, 88 S.Ct. 967 (1968); *Stovall v. Denno*, 388 U.S. 293, 18 L.Ed. 2d 1199, 87 S.Ct. 1967 (1967). If, however, there is a finding that the pretrial identification procedure was not impermissibly suggestive, then the court's inquiry is at an end, *State v. Headen*, 295 N.C. 437, 245 S.E. 2d 706 (1978), and the credibility of the identification evidence is for the jury to weigh. *Cf. Manson v. Brathwaite, supra,* 432 U.S. at 116. From this it follows that where, as here, there has been no pretrial identification procedure at all, there can be no requirement of a judicial determination of the independence and reliability of the in-court identification, for there has been no pretrial procedure upon which the in-court identification could depend. It further follows that, in the absence of pretrial identification procedures, formal findings of fact and conclusions of law regarding the independence and reliability of the identification are not required, for there are no relevant facts upon which to base a finding of the identification's independent origins. Hence, the trial

judge in present case was not required to make formal findings of fact and conclusions of law following *voir dire. Accord, State v. Cox, Ward and Gary,* 281 N.C. 275, 188 S.E. 2d 356 (1972).

Defendant's claim that Ms. Brown's in-court identification is not supported by the evidence elicited on *voir dire* is not therefore a *Biggers* type claim, but rather is a claim that her testimony in *inherently* unreliable and incredible. The credibility of a witness's identification testimony is a matter for the jury's determination, *State v. Orr,* 260 N.C. 177, 132 S.E. 2d 334 (1963); *State v. Bowman,* 232 N.C. 374, 61 S.E. 2d 107 (1950), and only in rare instances will credibility be a matter for the court's determination. In *State v. Miller,* 270 N.C. 726, 154 S.E. 2d 902 (1967), the Court held, in assessing defendant's motion for nonsuit, that the rule providing for jury assessment of the credibility and weight of evidence "does not apply . . . where the only evidence identifying the defendant as the perpetrator of the offense is inherently incredible. . . ." In that case the only evidence pointing to defendant's guilt was a State witness's identification of him at trial, based on his observation of a man he saw at the scene of the crime from a distance of 286 feet. Due to this great distance, the fact that the crime occurred at night and defendant was a total stranger to the "eyewitness," and the fact that the witness's description of the man differed from the defendant's actual appearance, the Court ruled that nonsuit should have been allowed.

The *Miller* case concerned the trial judge's assessment, in passing on a motion for nonsuit, of inherently incredible evidence already admitted at trial. In *State v. Cox,* 289 N.C. 414, 222 S.E. 2d 246 (1976); *State v. Herndon,* 292 N.C. 424, 233 S.E. 2d 557 (1977); and *State v. Wilson,* 293 N.C. 47, 235 S.E. 2d 219 (1977), the Court extended the *Miller* test to apply to instances where the defendant challenges the admissibility of identification evidence on grounds that it is inherently incredible. In all these cases the Court held the identification testimony admissible on grounds that there was "a reasonable possibility of observation sufficient to permit subsequent identification." *State v. Wilson,* 293 at 52, quoting from *State v. Miller, supra.*

[2]  In each of the above cited cases, a *voir dire* was held on defendant's motion to suppress such evidence. This Court has held, in *State v. Cox, Ward and Gary, supra,* that it is not error

for the trial judge to deny a *voir dire* on a witness's identification testimony when there has been no pretrial identification procedure. *See also State v. Alston*, 293 N.C. 553, 238 S.E. 2d 505 (1977). In *Cox* only a general objection to the identification testimony was entered. Though a *voir dire* is not required to determine the admissibility of identification testimony where no pretrial identification procedures have been conducted, we note that it would be the better practice to conduct a *voir dire*, prior to the admission of the testimony, when there has been a *specific* objection that the identification testimony is inherently unreliable or incredible. If a *voir dire* is held then the sole determination for the trial judge is whether or not the witness had " '. . . a reasonable possibility of observation sufficient to permit subsequent identification'. *State v. Miller, supra*. In such event the credibility of the witness and the weight of his or her identification testimony is for the jury. *State v. Cox, supra*, [289 N.C. 414, 222 S.E. 2d 246 (1976)]; *State v. Humphrey*, 261 N.C. 511, 135 S.E. 2d 214 (1964)." *State v. Wilson, supra*, 293 N.C. at 52. Only if there is a finding that the identification testimony "is inherently incredible because of the undisputed facts . . . as to the physical conditions under which the alleged observation occurred," *State v. Miller, supra*, should defendant's motion to suppress be allowed.

[3] In present case it is apparent from Ms. Brown's testimony on *voir dire* that she had a reasonable opportunity to observe her assailant. When he first opened the door in his efforts to escape she saw his lighted profile, and on his second opening of the door she saw his full face. The light was on in the hall outside the apartment and lit up the doorway as the man opened the door. Finally, her assailant was but a few feet from her at the time she saw his face. The physical conditions of the situation were thus favorable for observation, and there is nothing inherently incredible about observation being made under these circumstances. This being the case, the trial judge correctly overruled defendant's motion to suppress and allowed this testimony to be assessed and weighed by the jury.

[4] Defendant next assigns as error the trial court's refusal of his motion for nonsuit. His contention that nonsuit should have been allowed is based on his claim, considered and found to be without merit, that Ms. Brown's identification testimony was in-

herently incredible, and on the fact that no other evidence was found at the scene of the crime which would point to defendant's guilt. Defendant does not contest ample State's evidence that a crime has been committed. The *corpus delicti* being established, it suffices to say that Ms. Brown's competent identification testimony was sufficient to take to the jury the question whether the defendant was the perpetrator of the crime. The absence of physical evidence corroborating proper identification testimony does not warrant nonsuit. This assignment is overruled.

[5]  At trial Cynthia Jones testified as an alibi witness for defendant. She testified that on the night of the crime she was at the apartment of Delores Hamlet, and that she left the apartment at 3:20 a.m. to go visit another apartment. She met defendant and he walked with her. They returned to Delores's apartment at 4:20 a.m. On cross-examination the prosecutor asked the witness:

"Q. Did you know at that time that she [Delores Hamlet] had been convicted of the use of heroin through a syringe and a needle?

OBJECTION.

A. No. I didn't know nothing about her. She just invited me to a party. That's all I know.

THE COURT: OVERRULED.

\*    \*    \*

Q. Did you know that Delores Hamlet had been arrested recently for possession of a pound of marijuana?

OBJECTION.

A. No I didn't know her. I didn't know anything about her.

THE COURT: OVERRULED."

Delores Hamlet was not a witness at trial. It is apparent that the prosecutor was attempting to impeach the witness by virtue of her association with one who used and perhaps dealt in illegal drugs. Defendant argues that such cross-examination was improper and prejudicial to his case.

Under the English common law, the rule regarding impeachment of witnesses by proof of misconduct was very broad, providing that "*any* question tending to discredit" might be asked. *See* Lord Lovat's Trial, 18 How. St. Tr. 651 (1746). Under this tradition of cross-examination counsel was permitted to inquire into the associations of the witness for purpose of impeachment. *See* 3A Wigmore, Evidence §§ 983-986 (Chadbourn rev.); McCormick, Evidence § 42 (2d ed.); Phipson, Evidence § 1548 (11 ed. 1970). The English rule permitting any question relevant to the witness's character (*see* Wigmore, *id.* § 983, at 842 ff.), is not accepted today by the various jurisdictions in this country, most of which permit only some more limited form of inquiry into a witness's character and prior misconduct. In this jurisdiction it is recognized that a witness's character may be impeached by eliciting on cross-examination specific incidents of the witness's life tending to reflect upon his integrity or general moral character. 1 Stansbury, N.C. Evidence §§ 43, 111 (Brandis rev. 1973). Thus, specific acts of misconduct may be brought out on cross-examination of a witness, whether he be a criminal defendant or an ordinary witness. *See State v. Curry*, 288 N.C. 660, 220 S.E. 2d 545 (1975); *State v. McAllister*, 287 N.C. 178, 214 S.E. 2d 75 (1975); *State v. Gurley*, 283 N.C. 541, 196 S.E. 2d 725 (1973); *State v. Gainey*, 280 N.C. 366, 185 S.E. 2d 874 (1972); *State v. Colson*, 194 N.C. 206, 139 S.E. 230 (1927). Such questions must be asked in good faith and be based on information, *State v. Bell*, 249 N.C. 379, 106 S.E. 2d 495 (1959), and are subject to the witness's privilege against self-incrimination if asserted, *State v. Davidson*, 67 N.C. 119 (1872), as well as the discretion of the trial judge, *State v. Miller*, 288 N.C. 582, 220 S.E. 2d 326 (1975). *See* 1 Stansbury, *supra*, § 111, pp. 341-42. The rule is, however, limited to specific acts of prior misconduct, and is not so broad as to permit impeachment by means of pointing to prior misconduct by a witness's associates. The nexus between a witness's credibility and the character of his acquaintances is too attenuated and the subject matter is so collateral and so subject to abuse that cross-examination regarding such matters should not be permitted.

Accordingly, the trial court's failure to sustain defendant's objections constitutes error. The error was not, however, prejudicial. Only two questions concerning the character of the witness's associate were asked, and the witness answered both

questions in the negative, disavowing any knowledge of her associate's use of drugs. The prosecutor did not further inquire into the matter or attempt to badger the witness, and there is no indication that the questions were unfounded or asked in bad faith. Since the witness denied knowledge of the collateral matters and there is no indication of the prosecutor's bad faith, the questions were rendered harmless. *See State v. Spaulding*, 288 N.C. 397, 219 S.E. 2d 178 (1975); *State v. Ross*, 275 N.C. 550, 169 S.E. 2d 875 (1969). This assignment is overruled.

[6] Defense witness Bruce Ray testified that he lived and worked with defendant and that on 10 August he and defendant left work at midnight. They went to his mother's home and stayed fifteen or twenty minutes and then went to their apartment. Defendant left to get some cigarettes but returned after a short while. Later, defendant went out again and was gone about half an hour, returning about 2:00 a.m. Thereafter, defendant again left to visit a friend and returned about 4:00 a.m. The two of them then watched TV until about 5:00 a.m., at which time they went to bed. Ray further testified that he woke up at 7:00 a.m. and that defendant was still in bed. There was no blood on the floor and he noticed nothing different in the house. On cross-examination Ray denied that he told Detective Gurganious that on the night in question he went to bed about 1:00 a.m. and did not wake up until 6:00 a.m., at which time he saw defendant in bed. When Ray completed his testimony, Detective Gurganious was called as a witness. On cross-examination Gurganious testified that Ray's testimony at trial was different from the statement he made on the day of the crime. On that date Ray told Gurganious that he went to sleep on the couch about 1:00 a.m. and did not awake until 6:00 a.m., at which time defendant was in bed. Defendant contends that Ray's testimony regarding his sleeping hours was a collateral matter, that the State was bound by his answers, and that the testimony of Detective Gurganious was for that reason incompetent.

A witness may be cross-examined by confronting him with prior statements inconsistent with any part of his testimony, but where such questions concern matters collateral to the issues, the witness's answers on cross-examination are conclusive, and the party who draws out such answers will not be permitted to contradict them by other testimony. *State v. Mack*, 282 N.C. 334, 193

S.E. 2d 71 (1972); *State v. Long*, 280 N.C. 633, 187 S.E. 2d 47 (1972); 1 Stansbury, N.C. Evidence § 46 (Brandis rev. 1973). If the statements relate to a matter which is "pertinent and material to the pending enquiry," *Jones v. Jones*, 80 N.C. 246 (1879), or which respects "the subject matter in regard to which he is examined," *State v. Patterson*, 24 N.C. 346 (1842), they may be proved by other witnesses without first calling them to the attention of the main witness on cross-examination. *State v. Patterson, supra*; 1 Stansbury, *supra*, § 48. If the matters inquired about are collateral, but tend "to connect him directly with the cause or the parties" or show his bias toward either, the inquirer is not bound by the witness's answer and may prove the matter by other witnesses, but not before he has confronted the witness with his prior statement so that he may have an opportunity to admit, deny or explain it. Stansbury, *id.*; *State v. Long, supra*. Finally, with respect to all other collateral matters, the cross-examiner is bound by the witness's answer and may not contradict it by extrinsic evidence. Stansbury, id.; *State v. Poolos*, 241 N.C. 382, 85 S.E. 2d 342 (1955).

In *State v. Long, supra*, the Court set forth the following standard: "The proper test for determining what is material and what is collateral is whether the evidence offered in contradiction would be admissible if tendered for some purpose other than mere contradiction; or in the case of prior inconsistent statements, whether evidence of the facts stated would be so admissible." Defendant argues that evidence of Bruce Ray's prior statement, namely, that he went to sleep at 1:00 a.m. and did not awake until 6:00 a.m., does not meet this test, and that the statement was therefore collateral and not provable.

Though the *Long* definition of materiality is not broad enough to encompass the witness's statement, there can be little doubt that the witness's alibi testimony was itself material, for, if taken as true, it would tend to exonerate defendant from the crimes. Thus, this Court long ago recognized that, if the prior statement concerns "the subject-matter in regard to which he is examined," then extrinsic testimony of that inconsistent statement may be admitted to impeach the witness, *State v. Patterson, supra*, so long as, we might add, the subject matter of the witness's testimony is itself material to an issue in the case. Accordingly, in *State v. Wellmon*, 222 N.C. 215, 22 S.E. 2d 437 (1942),

the Court held that an alibi witness can be impeached by extrinsic testimony of his prior inconsistent statements. There the Court said: ". . . The testimony of the impeaching witnesses . . . respected the *main subject matter* in regard to which such witnesses were examined, namely, the whereabouts of the defendant at the time the offense is alleged to have been committed. This testimony went to the very heart of the case, since the defendant's defense was that of an alibi, and could, in no view of the case, be construed to be only collateral." (Emphasis added.) *See also State v. Lewis*, 177 N.C. 555, 98 S.E. 309 (1919), where the Court held that extrinsic testimony of inconsistent statements is admissible to impeach an alibi witness's testimony. Hence, it is clear that in this case the State could introduce extrinsic testimony of Bruce Ray's prior inconsistent statement where such statement conflicted with the subject matter of his testimony at trial. This assignment is overruled.

We have carefully reviewed the entire record and find no prejudicial error.

No error.

Justice BRITT took no part in the consideration or decision of this case.