STATE OF NORTH CAROLINA v. DAISEY SPICER WILLIAMS

No. 7818SC297

(Filed 3 October 1978)

**1. Homicide § 21.9 — involuntary manslaughter — sufficiency of evidence**

Evidence was sufficient to support a verdict of guilty of involuntary manslaughter where it tended to show that defendant was attempting to shoot herself when her husband, the deceased, interfered; the gun went off killing her husband; and defendant never intended to shoot her husband.

**2. Criminal Law § 119 — request for instructions — verbatim charge not required**

The trial judge charged the jury in substantial conformity with defendant's request, and he was not required to give her requested charge verbatim.

**3. Criminal Law §§ 73.4, 74.1 — defendant's statement not part of res gestae — statement not part of original confession**

The trial court in a homicide prosecution did not err in excluding the testimony of an officer that defendant told him shortly after the shooting that she was trying to kill herself and deceased tried to stop her, since (1) such statement was not a part of the *res gestae*, not being of spontaneous character and not happening contemporaneously with the incident in question and (2) the statement was not a part of defendant's original confession to a police dispatcher and therefore defendant was not entitled to have it introduced when the State offered the original confession.

APPEAL by defendant from *Albright, Judge.* Judgment entered 4 November 1977 in Superior Court, GUILFORD County. Heard in the Court of Appeals 17 August 1978.

Defendant was indicted and placed on trial for the felony of second degree murder in the killing of her husband, Patterson Milo Williams, on 28 February 1977. She was convicted of involuntary manslaughter and judgment of imprisonment for a term of five years was entered. The trial judge recommended her for the Work Release Program.

The State's evidence tended to show that at about one o'clock on the morning of 28 February 1977 defendant called the Greensboro Police Department by telephone and stated that she had just shot her husband. She requested that the police and an ambulance be sent. When the police officers and ambulance attendants arrived at her mobile home residence defendant admitted them and directed them to her husband. The deceased had been shot one

time with a .38 cal. revolver from a distance of more than four feet. The projectile entered deceased's right eye, traveled straight back at approximately the same level and lodged in the right back of his skull. In the opinion of the pathologist the deceased would have been instantaneously incapacitated, and death occurred within a minute or so of receiving the wound. The .38 cal. pistol which fired the fatal shot was found on the dresser of the bedroom of defendant's residence. It had four live rounds and one empty casing under the hammer. A stipulation between defendant and the State was entered as follows: "That a .38 caliber Smith and Wesson chrome revolver, serial number J427635, was seized by law enforcement officers in the early morning hours of February 28, 1977, at 724 Creekridge Road, Lot 130. That this named weapon was a weapon that fired a .38 caliber slug into the skull of the decedent, Patterson Milo Williams, resulting in his death." A switch-blade knife was also found on the dresser in defendant's bedroom, and a shotgun was standing in the corner of the bedroom. In the closet there was a ladies pocketbook with a .25 cal. automatic pistol and a blackjack.

The deceased's pickup truck was parked in the yard of the residence. A shotgun was in the rack across the rear window of the cab, and deceased's clothing was stacked neatly on the seat. All of the rooms in the mobile home residence were neat and not in disarray. The defendant was crying and was taken to the hospital by the officers where she was given a sedative before going to the police station.

Defendant's evidence tended to show that she and deceased enjoyed a good marriage, but that he spent all of his spare time hunting. They discussed this problem and decided to undertake a trial separation to see if it would improve or change their relationship. Defendant assisted deceased in putting some of his clothes in his pickup truck, and he was going to stay with his grandmother for a time. When defendant went back into her residence she decided to kill herself. She took the .38 cal. pistol out of the dresser drawer and sat down on the bed. She pulled the hammer back and placed the barrel to her head. Her plan was to wait for her husband to drive away before pulling the trigger. Suddenly her husband appeared at the bedroom doorway and asked what she was doing. She stood up, the pistol in her hand fired, and her husband fell. She ran to him, saw that he was

bleeding, and she called the police emergency. She did not deliberately point the pistol at her husband, did not intend to shoot him, and does not know how or why the pistol fired.

*Attorney General Edmisten, by Assistant Attorney General James E. Magner, Jr., for the State.*

*E. S. Schlosser, Jr. for the defendant.*

BROCK, Chief Judge.

We will not discuss defendant's assignment of error which relates to the trial court's denial of her motion for nonsuit made at the close of the State's evidence. By offering evidence in her own behalf defendant waived the motion for nonsuit made at the close of the State's evidence, and therefore she may now rely only upon her motion for nonsuit made at the close of all the evidence. G.S. 15-173.

[1]   The record on appeal discloses that at the conclusion of all the evidence the defendant made the following motion: "At the conclusion of all the evidence, the defendant moves for Judgment as of nonsuit." The bill of indictment charged defendant with murder. As such the indictment also charged the included lesser offenses of voluntary manslaughter and involuntary manslaughter. Defendant's motion obviously was addressed to the entire bill of indictment and was not limited to any one or more degrees of the crime charged. A motion addressed to the entire bill cannot be allowed if there is evidence to support any degree of the crime charged. *State v. Marsh*, 234 N.C. 101, 66 S.E. 2d 684 (1951). Under these circumstances, since defendant was convicted of involuntary manslaughter, it is merely academic whether the State's evidence would support a verdict of murder or of voluntary manslaughter. Therefore we will consider only whether the State's evidence was sufficient to withstand defendant's motion for nonsuit as to the included lesser offense of involuntary manslaughter.

"On motion to nonsuit, the evidence must be considered in the light most favorable to the state, and the state is entitled to every reasonable intendment thereon and to every reasonable inference therefrom. Contradictions and discrepancies, even in the State's evidence, are for the jury to resolve, and do not warrant

nonsuit. Only the evidence favorable to the state will be considered, and defendant's evidence relating to matters of defense, or defendant's evidence in conflict with that of the state, will not be considered." *State v. Henderson*, 276 N.C. 430, 438, 173 S.E. 2d 291, 296 (1970). When the evidence is considered in the light most favorable to the State, if there is substantial evidence, whether direct, circumstantial, or both, of all material elements of the offense charged, then the motion for nonsuit must be denied, and it is then for the jury to determine whether the evidence establishes guilt beyond a reasonable doubt. *State v. Mayo*, 9 N.C. App. 49, 175 S.E. 2d 297 (1970).

In our opinion when all of the evidence, and every reasonable inference therefrom, is considered in the light most favorable to the State it is ample to support a verdict of guilty of involuntary manslaughter.

Defendant further argues that the denial of her motion for nonsuit placed upon her the burden of proving that the shooting was an accident. This is a novel assertion, but it is clearly without merit.

[2] In her second assignment of error defendant asserts that the trial judge failed to instruct the jury in accordance with her timely filed written request for instructions. We have reviewed defendant's requested instructions and have reviewed the instructions to the jury as given by the judge. In our opinion the substance of the requested instructions was given by the judge. Although the judge must charge the jury in substantial conformity with a prayer for instruction which is legally correct in itself and is supported by the evidence, the judge is "not required to parrot the instructions or to become a mere judicial phonograph for recording the exact and identical words of counsel." *State v. Davis*, 291 N.C. 1, 14, 229 S.E. 2d 285, 294 (1976).

By her third and fourth assignments of error the defendant asserts that the trial judge erroneously instructed the jury on the elements of involuntary manslaughter and so stated the contentions of the parties as to express an opinion upon the evidence. We have reviewed these assignments of error and defendant's arguments thereon. In our opinion when the trial judge's instructions to the jury are considered as a whole they fairly and adequately submitted the issue to the jury upon applicable principles

of law. We see no reason to feel that the jury was misled or confused as to its duties or the legal principles applicable. We find no intimation of an opinion on the evidence by the trial judge. These assignments of error are overruled.

[3] Defendant's fifth assignment of error asserts that the trial judge committed prejudicial error in refusing to allow the State's witness, Officer Alley, to state on cross-examination what the defendant told him about how the shooting occurred. In the presentation of its evidence the State introduced defendant's statement to the police dispatcher that defendant had just shot her husband. However the State offered no statement by defendant made to the officers who talked with defendant later in person. On cross-examination of Officer Alley defendant asked: "What did she tell you happened concerning his death?" After the State's objection was sustained defendant was allowed to place Officer Alley's answer in the record in the absence of the jury. It was: "The defendant, Daisey Spicer Williams, stated that 'I was trying to kill myself, and he tried to stop me'."

Defendant argues that this statement was a part of the *res gestae* and should have been admitted. According to the testimony four minutes had elapsed between defendant's original call to the dispatcher and the arrival of Officer Alley at defendant's residence. We are left to speculate as to how much time elapsed between the fatal shooting and defendant's telephone call. Also we are left to speculate how much time elapsed between Officer Alley's arrival at defendant's residence and her statement to him. But be that as it may the statement does not qualify as part of the *res gestae*. "Declarations are competent as part of the *res gestae* if the declaration (1) is of such spontaneous character as to preclude the likelihood of reflection and fabrication, (2) is made contemporaneously with the transaction, or so closely connected with the main fact as to be practically inseparable therefrom, and (3) has some relevancy to the fact sought to be proved." *State v. Cox*, 289 N.C. 414, 420, 222 S.E. 2d 246, 251 (1976). Defendant's statement to Officer Alley fails tests (1) and (2) enumerated above. Defendant's argument that the State offered only a part of defendant's confession and that defendant is entitled to have the entire confession offered is based on sound legal principles but is not applicable. The State offered everything that defendant said to the police dispatcher, and authenticated it by the mechanical

State v. Williams

recording of the conversation. What defendant said later to another officer is simply not a part of the first statement. Defendant's further assertion that the exclusion of her statement to Officer Alley was prejudicial error because the statement was exculpatory is not convincing. In the first place, the statement "I was trying to kill myself, and he tried to stop me", can as easily be read as inculpatory. More importantly, this purported exculpatory statement made by the defendant was sought to be brought out on cross-examination of the State's witness during the State's presentation of its evidence. It was made to an officer after he had come to the defendant's residence and was not made in response to interrogation. "It is settled by repeated adjudications, that declarations of a prisoner, made after the criminal act has been committed, in excuse or explanation, at his own instance, will not be received; and they are competent only when they accompany and constitute part of the *res gestae*." *State v. Norris*, 284 N.C. 103, 105, 199 S.E. 2d 445, 446 (1973). We have already concluded that these excluded statements of the defendant were not part of the *res gestae*. So far as prejudice to the defendant is concerned the defendant was later permitted to call Officer Alley to testify in corroboration of her own testimony that she did make the statement to him. This assignment of error is overruled.

We have reviewed defendant's remaining assignments of error and conclude that they warrant no discussion. Although this was a tragic incident for all involved the jury has heard the entire evidence, observed the witnesses, and rendered its verdict. Defendant has received a fair trial, free from prejudicial error.

No error.

Judges HEDRICK and WEBB concur.